Shauck, J.
That an appeal may be taken to this court from the final judgment of the Court of Common Pleas, in an action like this, does not seem doubtful. Section five thousand two hundred and twenty-six of the Revised Statutes provides for the *198 appeal from judgments rendered by the Court of Common Pleas in civil actions of which it had original jurisdiction, if the right to demand a jury therein did not exist. Suits in equity to estaijjish the right to participate in trust funds were .well known prior to the adoption of our code of civil procedure, and “ the civil action of the code is a substitute for all such judicial proceedings as were previously known either as actions at law or suits in equity.” Chinn v. The Trustees, 32 Ohio St. 236.
The cases in which a jury may be demanded as of right are defined in section five thousand one hundred and thirty of the Revised Statutes. They are for the trial of “ issues of fact arising in actions for the recovery of money only, or specific real or personal- property.” This is not either in form or in substance an action for the recovery of money. The court can not enforce its judgment by execution. It can-not determine the amount of money the plaintiff is to receive. It can adjudge only that he is entitled to participate to the extent of his claim in the distribution of the trust estate, leaving undetermined all other questions by which the amount he is entitled to receive may be affected. Kennedy v. Thompson, 3 Cir. Ct. R. 446.
Whether one who has made a loan of money for the benefit of a firm, but upon the credit of an individual member, may resort to all for the recovery of the amount loaned, is a question upon which there is much apparent, and some real, conflict among the authorities. The field of necessary inquiry is, however, much narrowed by the fact that in this case the plaintiff ignores the note executed by the member, and sues for the consideration. It may, for the purpose of this case at least, be taken as settled law, that an action upon a promissory note can be maintained against thos$ only who have become parties to it. •
Other authorities cited upon the argument are not helpful here, because the plaintiff had no knowledge when it loaned the money, or when it accepted the renewals, that the member was not the actual borrower. It may be assumed that when ■one loans money to a member of a firm, knowing that it is for the Use of the firm, but elects to take the note of the mem *199 ber instead of the firm, his election is conclusive, and he can not thereafter resort to the firm for the repayment of the loan.
The precise question here is, whether one who has loaned m'oney for the direct use of a firm, upon the note of a sole member, and without knowledge that it was for the use of the firm, may, upon discovering the real borrowers, maintain an action for the amount of the loan against the firm. The comprehensive terms used by Collyer and Story, in stating the exemption of the firm from liability in cases where the credit is given to the individual member, do not seem to admit of an affirmative answer to that question. These writers, and the decisions that are in acGord with them, proceed upon the principle that they only are liable to whom credit was given. A leading authority in their support is Emly v. Lye, 15 East, 7. Numerous other authorities, including The National Bank of Salem v. Thomas, 47 N. Y. 15, tend to the conclusion that the firm is exempt in such a case. In Emly v. Lye the declaration contained several counts, some upon the bills drawn by the individual member, and some for money had and received. Lord Ellenborough, the other judges concurring, held that the firm was not liable even on the latter counts, although it appeared that the proceeds of the bills had passed into the partnership account. The reason for this conclusion seems to have been that the case presented nothing “more than the mere discount of bills, and it would be highly dangerous to follow the proceeds into the hands of every party to whose use they may be applied. In the later case of Denton v. Rodie, 3 Camp. 493, which concerned bills drawn by one partner in America upon his firm in Liverpool, according to his custom of drawing such bills, in favor of persons from whom he received thereon money for the use of the firm, the same judge held the firm liable on a count for money lent, although the bills had not been accepted by it, saying, “ I think this case is distinguishable from Emly v. Lye. Here I conceive the partner in America had authority from the two others to raise money for the use of the firm ; and money was accordingly raised from the plaintiffs upon these bills in pursuance of such authority. The transaction is a loan rather than' a *200 discount.” Except by those who are able to see that the distinction between a loan and a discount is material to the question under consideration, Denton v. Rodie will be regarded as his lordship’s admission that he had erred in Emly v. Lye.
It is apparently impossible to reconcile the liability of the defendant with the views expressed by the court in The Bank of Salem v. Thomas. The case is not clearly stated in the report, but the decision seems to be justifiable upon the ground that although the two partners who had signed the note sent its proceeds to the firm, they did so in response to a complaint made by the other members, that they had not contributed their share of the capital. • Certainly a firm is not liable for money borrowed by a member, and contributed as his share of the capital.
There is apparent force in the reasoning of these cases, that only those ought to be held liable to whom credit was given — that to remit the creditor to the individual liability of the member fwhom he trusted would be in accordance with his understanding of his rights when the loan was made. Its legal force is, however, much weakened by the consideration that credit is never given to a dormant partner, and it is unquestioned law that a dormant partner may always be charged when discovered. The equitable force of that reasoning is also much impaired by the fact that the individual estate to which it would remit the creditor is less by the amount of the credit than it would have been if the transaction had been as he understood it.
It is said that a judgment for the defendant is required by the authority of Peterson v. Roach, 32 Ohio St. 374. The authority of that case is to be respected in all tribunals inferior to the Supreme Court. It is, however, consistent with the respect due it, that not only the observations of the judge who wrote the opinion, but the proposition laid down by the court in the syllabus as well, be read with reference to the case decided. Courts neither possess nor affect the prescience necéssary to so define all legal propositions as that no exceptions or limitation thereto may be required by cases subsequently arising. In the petition, whose sufficiency was *201 there denied, it was not averred that the plaintiff becamel surety for the individual member in ignorance of the fact that the contract was for the firm ; nor was it shown that the firm did not give credit to the partner for the amount of the loan, or that it in any way treated the transaction as creating a liability from it to either the lender or the surety. The case before us concedes that if the lender knows that the money is for the firm, he is concluded by an election to take the note of a member; and, what ought to be always admitted — that although]! money borrowed by a member may go into the business of the firm, it does not become liable to the lender, if as between the firm and the borrowing member he receives a credit on account of the transaction. In these important respects, the case is distinguishable from Peterson v. Roach, although it may not be, from all the cases that are there cited with apparent approval. The same distinction may be drawn between this case and The Bank v. Sawyer, 38 Ohio St. 339.
That the firm is liable in a case of this character is held in Tucker v. Peaslee, 36 N. H. 167; Reynolds v. Cleveland, 4 Cow. 232; Colwell v. Weybosset National Bank, decided by the Supreme Court of Rhode Island, March 16, 1889, 17 Atlantic Reporter, 913, and numerous authorities considered in the cases cited.
The view of the authorities most favorable to the defendant is that they do not require judgment to be rendered against him, but leave us free to determine the case in accordance with reason and settled principles. The money, whose recovery is sought, went into the assets of the firm with the knowledge and assent of all its members, and in consideration thereof it parted with no property, assumed no liability to any one unless to the plaintiff. Considerations of justice require both that the firm should be liable for the money so received, and that the lender should not be remitted to an estate whose responsibility is less by the amount loaned than it would have been if the lender’s understanding of the transaction had been correct.
The partnership between Kelly and Allison is admitted. That relation implied that each was not only a principal *202 but an agent for the other in the joint business. Indeed, the authority of each to act as agent in matters relating to the joint business is now established in' this state as the true test of a partnership. Harvey v. Childs & Potter, 28 Ohio St. 319. In this transaction the firm was the real borrower — the principal — and Allison its agent, although the lender dealt with him under a misapprehension as to his true character. A pertinent rule as to the liability of the principal in such case is stated in Mechem on Agency, § 696. It broadly asserts the right of the creditor in such case to proceed against the undisclosed principal when subsequently discovered. The limitations upon that right need not be stated, as they are not pertinent here. The author’s statement of the law is supported by Evans and Story on Agency, and by numerous decisions. The rule receives strong support as well as a direct application to the case of a partnership in Tucker v. Peaslee. This rule is not assailed by Fradly v. Hyland, 37 Fed. Rep. 49, nor does there now seem to be any occasion to doubt it. The cases which restrict this principle in its application to partners, so as to allow a recovery against a secret or dormant partner only, are, in that regard, arbitrary. We examine them in vain for a reason which would authorize a recovery against a secret partner, to whom no credit was extended, that would not equally justify a recovery against the;firm when all of its members were unknown in the transaction.
The doctrine that a principal’s subsequent ratification of the act of his agent is equivalent to a previous authority is, we believe, no longer questioned. If the previous authority of a member to bind his firm for the repayment of money advanced to it upon his credit may be inferred from a course of business, as in Denton v. Rodie, we see no reason why the distinct and repeated ratifications of the act of the borrowing member in this case may nob be treated as the equivalent of a previous express authority to bind the firm in this transaction.
By a supplement to the answer in this case it is alleged that after the suit was brought the plaintiff sold the bank stock of Allison which he had hypothecated as security for the loan. *203 This averment the bank admits. The argument is that by this act the bank elected to assert its claim against the borrowing member, and, thereby waived its right to proceed against the firm. This argument implies what counsel do not venture to assert: that the application of security furnished by a member as collateral .to the liability of the firm is inconsistent with that liability. A creditor may. resort to all resources that are consistent, and cannot be required to elect between them.
Judgment for plaintiff.